UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DialloRafik A. Madison,

                              Petitioner,                    08 Civ. 5195 (SCR)(LMS)

              - against -                                    REPORT AND
                                                             RECOMMENDATION

DialloRafik A. Madison,

William F. Hulihan, Superintendent
Mid State Correctional Facility,

                              Respondent.


TO: THE HONORABLE STEPHEN C. ROBINSON,
        UNITED STATES DISTRICT JUDGE


        Petitioner DialloRafik Madison, proceeding pro se, seeks a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 to challenge his conviction for Promoting Prison Contraband in the

First Degree (N.Y. Penal Law § 205.25, sub 2).  Petition (Docket # 1) at 1.  On February 4, 1998,

Petitioner pled guilty to the aforementioned charge and on April 6, 1998, Petitioner was

sentenced to 1 ½ to 3 years imprisonment, to run consecutively to the sentences Petitioner was

already serving for the crimes of Robbery in the Second Degree (7 ½ to 15 years), Sexual Abuse

in the First Degree (3 ½ to 7 years), Assault in the Second Degree (3 ½ to 7 years), and Criminal

Possession of a Controlled Substance in the Seventh Degree (1 year).  Resp't Answer (Docket

#9) at 12.

        Before his habeas petition was filed, Petitioner directly appealed his conviction for

Promoting Prison Contraband in the First Degree to the Appellate Division, Third Department,

on April 8, 1998, even though he had waived his right to appeal as part of his plea agreement.

Resp't Ex. B (Appellant's Brief and Appendix).  The Appellate Division unanimously affirmed

Petitioner's conviction on February 11, 1999.  People v. Madison, 258 A.D.2d 741 (3rd Dep't 1999).   Petitioner then sought leave to appeal to the New York State Court of Appeals; leave was denied on June 25, 1999.  Resp't Ex. G (Certificate Denying Leave to Appeal).  Nearly 8 years later, Petitioner brought a § 440.10 motion (N.Y. Penal L. § 440.10) in Sullivan County Court seeking to vacate his conviction for Promoting Prison Contraband in the First Degree. Resp't Ex. H (Affidavit in Support of Motion to Vacate).  Petitioner's § 440.10 motion was denied on October 5, 2007.  Resp't Ex. K (Decision and Order).  Petitioner then applied for permission to appeal this decision to the Appellate Division, Third Department; such application was denied on December 18, 2007.  Resp't Ex. N (Permission Denied).

Petitioner executed a petition for a writ of habeas corpus on April 2, 2008, and delivered the petition that same day to prison authorities for transmission to the court.  Pet. (Docket #1) at 14.   The petition presents several grounds for habeas relief: (1) ineffective assistance of counsel, (2) mental disease and defect that affected Petitioner's ability to knowingly and voluntarily plead guilty, and (3) denial of Petitioner's right to a speedy trial.  Pet. (Docket #1) at 5-12.  Petitioner also states in his habeas petition that he was unable to file a timely habeas petition due to his suffering from a mental disease and defect.  Pet. (Docket #1) at 13.  The court then ordered Petitioner to file an amended petition addressing the mental health issues that Petitioner claims resulted in his inability to timely file.  60 Day Order (Docket #3).  Petitioner executed his amended petition on June 26, 2008, and delivered it that same day to prison authorities for filing. Amended Petition (Docket #4).  Respondent then filed an Answer and Memorandum of Law in Support of Answer on December 1, 2008, in which Respondent claims, among other things, that Petitioner's initial habeas filing was untimely.  Resp't Answer (Docket #9) at 14.

2

Petitioner was asked by the court to respond further to the allegations that his habeas petition was barred by the statute of limitations and was allowed several extensions of time to submit documentation to support his claims.  See Endorsed Letter (Docket #11); Endorsed Letter (Docket #12); Memo Endorsement (Docket #14).  On April 14, 2009, Petitioner submitted an Affidavit of Addendum to his habeas petition in which he claims that his petition is not time barred because: (1) Petitioner suffered from a mental disease (Post Traumatic Stress Disorder) and was ingesting various drugs that did not allow him to protect his legal rights during the one year statute of limitations period, (2) petitioner's mental capacity is at issue in the petition, (3) a State-created impediment was present because the prison law library's procedural instructions were misleading, (4) Petitioner is "actually innocent," and (5) the Suspension Clause of the United States Constitution requires an exception for actual innocence.  Addendum (Docket #15) at 1-2.  Along with the Addendum, Petitioner submitted several exhibits, including: 110 pages of medical records; habeas petition instructions and forms; affidavits from prison law librarians; transcripts of grand jury testimony from Petitioner's original trial for Robbery; and excerpts from the prosecutor's brief in Petitioner's original trial for Robbery.  Addendum (Docket #15), Exs. I-X.[1]  Respondent filed a letter refuting Petitioner's claim that a mental disease or defect should equitably toll the statute of limitations; Respondent requested the court to ignore Petitioner's exhibits referring to his original Robbery trial, as that conviction is not at issue.  Resp't Letter (Docket #17).

Petitioner responded by filing a Verified Traverse on May 6, 2009, in which he reiterates

---

[1]Petitioner's mental health records have been filed under seal and are only referred to in this Report and Recommendation when necessary.

his earlier claims and further states that the exhibits relating to his first conviction of Robbery are relevant because such evidence would have exonerated him of the Robbery charge and, thus, he would not have been sentenced as a predicate felony offender in the conviction at issue in this habeas petition.  Traverse (Docket #18).  Petitioner then filed an addendum to his Verified Traverse which contained 33 pages of mental health records that he claims were "left out" of the prior submissions.  Addendum to Traverse (Docket #16) at 1.  Various letters and replies were filed by both Petitioner and Respondent, all reiterating the same claims on both sides.

For the reasons that follow, I conclude, and I respectfully recommend that Your Honor should conclude, that the Petition should be dismissed as untimely.  In the event that Your Honor disagrees with my recommendation, I respectfully request that the matter be referred to me again, for a Report and Recommendation on the substance of the petition.

## DISCUSSION

### Standard of Review

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under the AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); see also Picard v. Connor, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious federal review, states should have the first opportunity to address and correct alleged violations of a state prisoner's federal rights.  See Coleman v. Thompson, 501 U.S. 722, 731 (1991); see

also Daye v. Attorney General of the State of New York, 696 F.2d 186, 190-91 (2d Cir. 1982).

The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C.

2254(b), (c):

> (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. 2254(b), (c).

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). This includes "direct review by the United States Supreme Court via writ of certiorari, and [thus] the limitations period for state prisoners therefore begins to run only after the denial of certiorari or the expiration of time for seeking certiorari." Williams v. Artuz, 237 F. 3d 147, 151 (2d Cir. 2001). The limitations period is tolled while ". . . a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him from filing his petition on time." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). After a petitioner has met these threshold requirements, a federal district court generally may hear "an application for a writ of

habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

In this case, the preliminary condition requiring filing within the one year statute of limitations under AEDPA has not been satisfied. Therefore, I conclude, and I respectfully recommend that Your Honor should conclude, that Petitioner's habeas corpus petition is untimely and must be dismissed.

**The Statute of Limitations**

As noted above, Petitioner's leave to appeal to New York State's highest court, the Court of Appeals, was denied on June 25, 1999.  Resp't Ex. G (Certificate Denying Leave to Appeal). The only remedy available to Petitioner to contest such a denial is a direct appeal to the United States Supreme Court, obtainable only by filing a petition for a writ of certiorari.  Petitioner never filed such a petition, therefore the judgment of the Court of Appeals became final when the time for filing such an appeal expired.  See Ross v. Artuz, 150 F.3d 97, 98 (2d Cir. 1998).

Rule 13 of the Rules of the United States Supreme Court reads:

> Unless otherwise provided by law, a petition for a writ of certiorari
> to review a judgment in any case, civil or criminal, entered by a
> state court of last resort...is timely when it is filed with the Clerk of
> this Court within 90 days after entry of the judgment.

Thus, Petitioner had 90 days from the date the Court of Appeals denied him leave to appeal in which to file a petition for a writ with the United States Supreme Court.  Since Petitioner did not choose to file a petition for a writ of certiorari within that time, his judgment became final on September 25, 1999 – 90 days from the date his application for leave to appeal was denied by the

Court of Appeals.  This, then, is the date when the statute of limitations under AEDPA began to run.  Therefore, under AEDPA's one year statute of limitations provision, Petitioner had until September 25, 2000, to file a petition for a writ of habeas corpus.

Petitioner executed his petition for a writ of habeas corpus on April 2, 2008.  Pet. (Docket #1) at 14.  A pro se prisoner's petition for habeas corpus is deemed filed on the day he or she delivers the petition to prison authorities for transmittal to the court.  Houston v. Lack, 487 U.S. 266; see also Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) ("... a prisoner appearing pro se satisfies the time limit for filing a notice of appeal if he [or she] delivers the notice to prison officials within the time specified. This 'prison mailbox' rule is justified by the litigant's dependence on the prison mail system and lack of counsel to assure timely filing with the court").  Petitioner's signature on his original habeas petition is preceded by the typewritten date of "April 2, 2008."  The habeas petition also contains a section, following Petitioner's signature, which reads as follows:

> I declare under the penalty of perjury that on _____, I
> delivered this petition to prison authorities to be mailed to the
> United States District Court for the Southern District of New York.
>
> _____
> Signature of Petitioner

Petitioner signed and dated this clause "April 2, 2008," as well.  Pet. (Docket #1) at 14.  Thus, the evidence before the Court establishes that the earliest date that Petitioner could claim he filed his application for a writ of habeas corpus is April 2, 2008, seven and one half years past the filing deadline of September 25, 2000.[2]

---

[2]The court will use the date of the original habeas petition and not the amended habeas petition which was submitted, at the court's request, on June 26, 2008.

***Statutory Tolling of the Statute of Limitations***

AEDPA provides for statutory tolling of the one year statute of limitations while the petitioner seeks to exhaust all measures available to him or her in state court for review of the judgment. 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection"). Therefore, a properly filed § 440.10 motion may toll the one year statute of limitations under AEDPA. However, any motion that either directly or collaterally attacks a judgment must still be filed within the one year period in order for the petitioner to take advantage of the tolling provision. See Smith v. McGinnis, 208 F.3d 13 (2d Cir. 2000). "[P]roper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run." Id. at 17. Therefore, in order for a petitioner to take advantage of the statutory tolling provision, any post conviction motion must still be filed within one year of the final judgment. "If the one year period began anew when the state court denied collateral relief, then state prisoners could extend or manipulate the deadline for federal habeas review by filing additional petitions in state court." Id. See also Doe v. Menefee, 391 F.3d 147, 154 (2d Cir. 2004) ("When the AEDPA limitations period expired on November 19, 1999, [petitioner] had not yet filed the § 440 motion, thereby losing the opportunity to invoke 28 U.S.C. § 2244(d)(2)'s provision for tolling the limitations period during the pendency of a state post-conviction motion"). Petitioner's § 440.10 motion was filed on June 7, 2007, nearly 8 years after the judgment became final and well outside the one year statute of limitations that expired on September 25, 2000.

8

Thus, Petitioner is not entitled to any statutory tolling of the one year statute of limitations under

AEDPA based on his § 440.10 motion.

***Equitable Tolling of the Statute of Limitations***

The Supreme Court and the Second Circuit have both held that extraordinary

circumstances may exist which will equitably toll the statute of limitations under AEDPA.  See

Pace v. DiGuglielmo, 544 U.S.408 (2005); Warren v. Garvin, 219 F.3d 111 (2d Cir. 2000);

Smith v. McGinnis, 208 F.3d 13 (2d Cir. 2000).   The burden of establishing such extraordinary

circumstances falls on the petitioner.  Rhodes v. Senkowski, 82 F. Supp. 2d 160 (S.D.N.Y. 2000)

("The burden is on the petitioner-here, Rhodes-to make such a showing, and federal courts are to

'take seriously Congress's desire to accelerate the federal habeas process, and will only authorize

extensions when this high hurdle is surmounted.' " Id.  at 167; quoting Calderon v. United States

Dist. Court, 128 F.3d 1288, 1289 (9th Cir. 1997)); see also Pace v. DiGuglielmo, 544 U.S. 408,

418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two

elements: (1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some

extraordinary circumstance stood in his [or her] way").

Petitioner states several grounds that he believes justifies equitable tolling of the one year

statute of limitations: (1) Petitioner suffered from a mental disease (Post Traumatic Stress

Disorder) and was ingesting various drugs that did not allow him to protect his legal rights during

the one year statute of limitations period, (2) petitioner's mental capacity is at issue in the

petition, (3) a State-created impediment was present because the prison law library's procedural

instructions were misleading, (4) Petitioner is "actually innocent," and (5) the Suspension Clause

of the United States Constitution requires an exception for actual innocence.  Addendum (Docket #15) at 1-2.  These points will be addressed in order.

## Points 1 and 2:  Mental Disease or Defect

The Second Circuit has recognized that "a petitioner seeking habeas relief can in some rare and exceptional circumstances rely on proof of mental illness to justify equitable tolling of the AEDPA's limitation period." Rios v. Mazzuca, 78 Fed. Appx. 742, 743 (2d Cir. 2003).  See also Rhodes, 82 F. Supp. 2d at 173 ("In sum, the Court agrees with Rhodes that physical or mental illness could toll the AEDPA's one year time period to file a habeas corpus petition").  However, "whether a person is sufficiently mentally disabled to justify tolling of a statute of limitations period is, under the law of this Circuit, highly case-specific." Rios, 78 Fed. Appx. at 744 (citing Boos v. Runyon, 201 F.3d 178, 184 (2d Cir. 2000)).  A review of Petitioner's  mental health records is, therefore, appropriate.

Petitioner appended 16 pages of medical records to his original habeas petition.  Pet. (Docket #1) at 18-33.  Petitioner then submitted 25 pages of medical records, the first 16 pages of which were duplicates of his previous submission, with his amended habeas petition.  Amended Petition (Docket #4) Ex. 2.  These same 25 pages were then again included in the 110 pages of medical records that Petitioner later submitted with his Affidavit of Addendum.  Addendum (Docket #15) Exs. I-III.  These records consist mainly of logs of Petitioner's intake of medications, including Benedryl, Zoloft, Vistaril, and Sinequan, as well as copies of prescriptions, progress notes by various mental health practitioners, and a psychiatric evaluation. Although the Petitioner submitted a certification with his habeas petition from George Zahurak,

Unit Coordinator of the Woodbourne Mental Health Unit of Central New York Psychiatric

Center, that "the enclosed is a true and accurate copy of the clinical and psychiatric records of

Diallo Madison, totaling 233 pages," Petitioner has only submitted 110 pages of medical records.

Pet. (Docket #1) at 18, Addendum (Docket #15) Exs. I-III.

      The medical records submitted by Petitioner span the years 1997-2008.  Addendum

(Docket #15), Exs. I-III.  However, noticeably absent are any records that pertain to the one year

statute of limitations period at issue, more specifically September 25, 1999, to September 25,

2000.  Petitioner's last record before this period is a medication log indicating that Petitioner

stopped taking Vistaril on September 8, 1999.  Addendum (Docket #15) at 15.  The next

submitted page is labeled "Oct." but does not specify the year.  This page is another medication

log showing that Petitioner was issued Vistaril, Zoloft and a scalp cream.  Addendum (Docket

#15) at 16.  After this, the next medical record available is from July 3, 2001.  Addendum

(Docket #15) at 17.  Therefore, at best, Petitioner has only submitted one possible page of

medical records covering the one year statute of limitations period that he seeks to have equitably

tolled.

      Petitioner claims that he suffered from "Mood Disorder," Post Traumatic Stress Disorder

and blackouts resulting from his ingestion of incapacitating drugs which resulted in him not

being able to protect his legal rights.  Addendum (Docket #15) at 1-3.  Based on the records

before the court, there is no clear diagnosis or record of any of these disorders being present

during the year at issue.  The first mention of Post Traumatic Stress Disorder is in an Outpatient

History dated August 31, 2001, well past the one year statute of limitations period.  Addendum

(Docket #15) at 20.  One of the only other references to Post Traumatic Stress Disorder is in the

11

psychiatric evaluation by Dr. Al Shimkunas, Ph.D., in 2008.   Dr. Shimkunas states that "various clinicians who have evaluated [Petitioner] for treatment have either questioned the validity of this diagnosis or flatly rejected it."  Addendum (Docket #15) Ex. III at 1.  After interviewing and analyzing Petitioner, Dr. Shimkunas does eventually diagnose Petitioner with Post Traumatic Stress Disorder but notes that there is "no provision for determining [the] validity of [petitioner's] response, and the scale [of the administered test] is entirely based on patient verbal report."  Addendum (Docket#15) Ex. III at 3.  Furthermore, Dr. Shimkunas states, "It is also noteworthy that the patient's insistence on having his PTSD diagnosis confirmed is tied to his repeated request for single cell housing..."  Addendum (Docket#15) Ex. III at 3.  Again, this examination and report took place in 2008, long after the statute of limitations period had run.  Furthermore, none of the records mentions "Mood Disorder," although Petitioner is often described as anxious or depressed.  Addendum (Docket #15) Ex. I.  There are no medical records which substantiate Petitioner's claim of blacking out.  In summary, Petitioner has not submitted any official medical records that show he was either suffering from "Mood Disorder," Post Traumatic Stress Disorder, or blackouts during the one year statute of limitations period.

While Petitioner may have submitted one medication log that shows he may have been taking Vistaril and Zoloft in October of 1999, this hardly satisfies the "high hurdle" to justify equitable tolling.  Rhodes, 82 F. Supp. 2d at 167.  The Second Circuit has rejected more compelling evidence of severe mental and physical illness submitted in support of claims for equitable tolling, such as a prisoner's verified medical records that diagnosed him as suffering from "schizophrenia, schizo-affective disorder, and antisocial personality disorder" which "caused him to hear voices, attempt suicide, and periodically rendered him catatonic."  Rios, 78

12

Fed. Appx. at 744.  Also unpersuasive was a claim for equitable tolling by  a prisoner who

suffered from AIDS and was hospitalized repeatedly for "headaches, depression, hypertension,

weight loss, a fungal infection and 'atypical chest disorder.' "  Rhodes, 82 F. Supp. 2d at 169-70.

In light of these holdings, Petitioner's submission of a single page which may, or may not, refer

to medications taken by Petitioner during October 1999, is simply insufficient to establish that

extraordinary circumstances existed which prevented him from filing a timely habeas petition.

**Point 3:  State-Created Impediment**

Petitioner further claims that he is entitled to equitable tolling of the one year statute of

limitations period because of a State-created impediment that prevented him from timely filing.

Addendum (Docket #15) at 13.  Petitioner claims that because neither the Northern District

Court's instructions nor the old habeas petition form that was provided to him contain any

reference to the AEDPA's one year statute of limitations period, this served as a State-created

impediment to his timely filing.  Addendum (Docket #15) at 13-16.

The Second Circuit has recognized that equitable tolling is appropriate where the state

has intentionally created an impediment to timely filing.  Valverde v. Stinson, 224 F.3d 129

("The intentional confiscation of a prisoner's habeas corpus petition and related legal papers by a

corrections officer is 'extraordinary' as a matter of law." Id.  at 133.).  However, this exception

has been limited to the type of assertive behavior detailed in Valverde and not where, as in this

case, the state simply does not alert Petitioner to the law.  "Equitable tolling is warranted when

some event *effectively prohibits* the petitioner from pursuing habeas, such as the misplacement of

files, or being denied access to materials necessary to file a habeas petition."  Raynor v. Dufrain,

28 F. Supp. 2d 896, 900 (S.D.N.Y. 1999)(emphasis added).  Here, Petitioner was not denied access to filing a habeas petition and he was provided with the proper form and instructions, albeit lacking the reference to the one year statute of limitations which is contained in later forms.  This, however, in no way "effectively prohibited" Petitioner from filing on time within the one year statute of limitations period.

Furthermore, courts have held that ignorance of the statute of limitations does not justify equitable tolling.  ("Ignorance of the law does not constitute a rare and extraordinary circumstance that would merit equitable tolling."  Ruiz v. Poole, 566 F. Supp. 2d 336, 341 (S.D.N.Y. 2008); "[A] self-serving statement that the litigant is ignorant of the law is not grounds for equitable tolling of a statute of limitations."  Brown v. Superintendent, Elmira Correctional Facility, 97 Civ. 3303 (MBM), 1998 WL 75686 (S.D.N.Y. Feb. 23, 1998); "[Petitioner's] statement that he is generally unknowledgeable about the governing law or the AEDPA in particular is insufficient to warrant equitable tolling."  Cannon v. Kuhlman, 99 Civ. 10101 (DLC), 2000 WL 1277331 (S.D.N.Y. Sept. 7, 2000)).[3]  Therefore, Petitioner's claim that he was ignorant of AEDPA's one year statute of limitations period does not rise to the level of a State-created impediment and does not justify equitable tolling.

**Point 4: Actual Innocence and the Suspension Clause**

"The doctrine of actual innocence was developed to mitigate the potential harshness of the judicial limitations placed on a petitioner's ability to file successive or otherwise procedurally defaulted habeas petitions in the federal courts."  Doe v. Menefee, 391 F.3d 147, 160 (2d Cir.

---

[3]In the spirit of Local Civil Rule 7.1(c), copies of the opinions with WestLaw cites are attached to the copy of this Report and Recommendation which is sent to Petitioner.

2004).  See Schlup v. Delo, 513 U.S. 298 (1995) (establishing the contours of the actual

innocence exception).  Thus, "in an extraordinary case, where a constitutional violation has

probably resulted in the conviction of one who is actually innocent, a federal habeas court may

grant the writ even in the absence of a showing of cause for the procedural default."  Murray v.

Carrier, 477 U.S. 478, 496 (1986).  However, the Second Circuit has refused to hold broadly that

equitable tolling of the AEDPA one year statute of limitations is appropriate in circumstances of

actual innocence.  Doe, 391 F.3d at 161.  Instead, the Second Circuit has "instructed district

courts faced with untimely petitions in which the petitioner asserts his or her actual innocence to

determine, in each case, whether the petitioner has presented a credible claim of actual innocence

before ruling on the legal issues of whether such a showing provides a basis for equitable

tolling."  Id.

    Petitioner's claim of actual innocence is not directed at the infraction that is the subject of

his habeas petition; rather, the claim attacks the conviction for which Petitioner was already

serving his sentence when he was indicted and pled guilty to the crime of Promoting Prison

Contraband – which is the offense on which his habeas petition is based.  Addendum (Docket

#15) at 17.  Petitioner's argument is that if he is actually innocent of his first conviction, then he

should not have been sentenced as a predicate felony offender for the crime on which his habeas

petition is based.  Addendum (Docket #15) at 17.

    The Supreme Court has held that habeas "relief is available when a prisoner challenges a

current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior

conviction...."  Lackawanna County District Attorney v. Coss, 532 U.S. 394, 396-7 (2001).

However, the Supreme Court has also held that a petitioner may not challenge a prior conviction

15

in this manner if he or she has already fully exhausted his or her claims on the first conviction.
Lackawanna, 532 U.S. at 403-4.  Thus, if a petitioner has fully pursued his or her remedies with
regard to the first conviction, he or she "may not challenge the enhanced sentence [of the second
conviction] through a petition under § 2254 on the ground that the prior conviction was
unconstitutionally obtained."  Id.  In this case, Petitioner appealed his first conviction to the New
York State Supreme Court, Appellate Division, Second Department and his conviction was
affirmed.  People v. Madison, 230 A.D.2d 807 (2nd Dep't 1996).  Petitioner then sought leave to
appeal to the New York State Court of Appeals, which was denied.  People v. Madison, 89
N.Y.2d 925 (1996).  Thus, Petitioner has fully exhausted his remedies with regard to his first
conviction and the judgment is considered "conclusively valid."  Lackawanna, 532 U.S. at 403.
Since his prior conviction can no longer be attacked as unconstitutional, Petitioner cannot use
that prior conviction as a basis for an actual innocence claim in challenging the enhanced
sentence on which his habeas petition is based.

Petitioner's reliance on Spence v. Great Meadow Correctional Facility is misplaced.  In
Spence, the petitioner was sentenced to an enhanced sentence for his *first* conviction based on
information provided to the court that he had been re-arrested in violation of his bail conditions.
Spence v. Great Meadow Correctional Facility, 219 F.3d 162 (2d Cir. 2000).  After the enhanced
sentence had been handed down, petitioner was tried on the second charge and acquitted. Id. at
166.  The court held that petitioner could make an actual innocence claim for the enhanced
sentence because he had proven "by clear and convincing evidence...that he [was] actually
innocent of the act on which his harsher sentence was based."  Id. at 172.  In contrast, Petitioner
in this case has fully exhausted his appeals for his first conviction and has not thereby established

16

his actual innocence. Thus, <u>Spence</u> is not applicable in this case and equitable tolling is not available to Petitioner based on his actual innocence claim.  Because Petitioner's actual innocence claim is unfounded, this Court need not reach the Suspension Clause argument.

<u>**CONCLUSION**</u>

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the instant habeas petition should be dismissed as untimely.  As the petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue.  <u>Rodriguez v. Scully</u>, 905 F.2d 24 (2d Cir. 1990) (<u>per</u> <u>curiam</u>); <u>Alexander v. Harris</u>, 595 F.2d 87, 90-91 (2d Cir. 1979).  I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. §1915(a) that an appeal from this order would not be taken in good faith.  <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

<u>**NOTICE**</u>

Pursuant to 28 U.S.C. §636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, <u>see</u> Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

17

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Robinson and should not be made to the undersigned.

Dated:  December 22, 2009
        White Plains, New York

                                        Respectfully submitted,

                                        Lisa Margaret Smith
                                        United States Magistrate Judge
                                        Southern District of New York

Copies of the foregoing Report & Recommendation have been sent to the following:

The Honorable Stephen C. Robinson

DialloRafik A. Madison
94-A-7376
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403

Bonnie M. Mitzner, Assistant District Attorney
Sullivan County District Attorney's Office
County Court House
Monticello, New York 12701